## NANCY WEINSTEIN *v.* LUKE A. WEINSTEIN
### (AC 24855)

Lavery, C. J., and Flynn and Bishop, Js.

Argued October 13, 2004—officially released March 1, 2005

*Luke A. Weinstein,* pro se, the appellant (defendant).

*Lori Welch-Rubin,* with whom, on the brief, was *Susan W. Wolfson,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Luke A. Weinstein, appeals from the judgment of the trial court denying his motion for a downward modification of child support and granting the motion filed by the plaintiff, Nancy Weinstein, for an upward modification of child support. The defendant asserts that in awarding an increase in child support, the court improperly (1) imputed greater income to his investments and bank accounts than he actually realized, (2) imputed an unsubstantiated earning capacity to him, (3) failed to deviate from the child support guidelines to account for the parties' joint physical custody arrangement and (4) made an award of

child support to the plaintiff that was, in reality, disguised alimony. The defendant also claims that the court improperly awarded the plaintiff the right to claim the parties' minor child as a dependency exemption for federal income tax purposes. We reverse the judgment of the trial court.[1]

The following facts and procedural history are relevant to our discussion of the issues on appeal. The court, *Higgins, J.*, dissolved the parties' marriage on May 12, 1998. The judgment included an agreement that the parties would share joint physical custody of their minor child, who was born on January 27, 1996, and that the amount of child support the defendant then was paying would be recomputed "at the guideline amount in September, 1998." In November, 1998, pursuant to a September 26, 1998 agreement of the parties, the court, *Arena, J.*, ordered the defendant to pay child support to the plaintiff in the amount of $125 per week and to pay the sum of $661 per month directly to the child's day care provider. In adopting the parties' agreement, the court noted that the amount of support to which the parties had agreed represented an acceptable deviation from the guidelines because the parties equally shared physical custody of their child. Subsequently, on April 30, 2001, the court, *Parker, J.*, increased the defendant's child support obligation to $160 per week because of an increase in his income and in light of the parties' joint custody arrangement.[2]

On April 17, 2002, the defendant filed a motion for a downward modification of child support, claiming a decrease of his income due to the termination of his employment. In turn, on December 9, 2002, the plaintiff

---

[1] Because we reverse the judgment on the basis of the defendant's first claim, we need not reach his second, third and fourth claims.

[2] In reaching the support amount, the court deviated from the amount indicated by the child support guidelines by 50 percent because of the parties' joint physical custody arrangement.

filed a motion for an upward modification of child support, claiming that the defendant's financial circumstances had improved since the previous modification in April, 2001. Following a hearing on December 9, 2002, the court, *Jones, J.,* issued a preliminary memorandum of decision on April 3, 2003, in which it found that the defendant had an annual earning capacity of $125,000 and the plaintiff had an annual earning capacity of $25,000. Additionally, the court scheduled a supplemental hearing to consider the computation of child support under the guidelines based on the parties' earning capacities and their passive incomes. Specifically, the court gave the parties an opportunity to be heard on the question of whether the calculation of the defendant's income should include capital gains realized on certain assets he held and on the question of how to determine the appropriate amount of capital gains and investment income to be included in the calculation of the defendant's income for purposes of establishing a child support order. That hearing took place on April 21, 2003.

Subsequently, on July 3, 2003, the court denied the defendant's motion for a reduction in child support and granted the plaintiff's motion for an increase in child support, ordering the defendant to pay the sum of $285 per week. In reaching the amount of child support, the court considered its assessment of the parties' respective earning capacities and not their stated incomes from employment. Additionally, the court attributed the sum of $9724 as income to the plaintiff due to a distribution she received from a family partnership. As to the defendant, the court attributed to him an earning capacity based on his education and work history and also found that his annual income from investments and bank accounts amounted to $31,080. The court made its determination regarding the defendant's passive income, notwithstanding evidence that he actually received substantially less investment income and in

the absence of any finding that the defendant wilfully had reduced his passive income to avoid a child support obligation or that the amount realized by the defendant on his investments was unreasonably low. Finally, the court awarded the plaintiff the right to claim the parties' child as a dependency exemption on her tax filing for 2003 and alternating years thereafter, apparently, on the basis of the court's conclusion that the plaintiff's stated earning capacity of $25,000 per year, combined with her actual passive income, entitled her to this right in accordance with the marital dissolution judgment. This appeal followed.

I

The defendant first claims that in making its child support order, the court improperly imputed an amount of investment income to him that was unsupported by the evidence and not legally warranted. We agree.

The following facts are relevant to this claim. At the April 21, 2003 hearing, the defendant produced his 2002 federal income tax return, which indicated that he had received $11,424 of income from an investment account valued at $1,025,000 and $1597 in interest from a money market account worth $25,000. Thus, this evidence showed that the defendant's total passive income in 2002 was $13,021.[3] In its July, 2003 memorandum of decision, the court found, however, that the defendant had an imputed investment income of $31,080 per year. In reaching this figure, the court stated: "The income is imputed on the defendant's Schwab account ($1,025,000) and his checking account ($25,000) shown

---

[3] We are mindful that the defendant also submitted a financial affidavit dated December 6, 2002, in which he claimed that his annual investment income was $8216. The court's decision, however, did not rest on issues of credibility regarding the defendant's passive income, but rather on the reasonableness of the return the defendant realized from his investments compared with the amount the court determined he could have earned from another investment vehicle with similar principal value.

on his financial affidavit dated December 6, 2002. The interest rate is 2.96 percent, the five year [treasury] bill rate as of April 14, 2003." In utilizing the treasury bill rate, the court made no finding that the defendant wilfully had reduced his investment income to evade a reasonable child support order or that the amount of his investment income was unreasonably low. Rather, the court appears to have attributed the higher rate of return to the defendant solely on its determination that treasury bills offered a higher rate of interest than the defendant was realizing from his own investment strategies.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 9–10, 787 A.2d 50 (2001).

This issue presents the question of whether a court in a marital dissolution action may attribute a higher level of income to investment assets than proven by the evidence, in the absence of a finding that the investing party has wilfully depressed passive income to avoid a support obligation, solely on the basis that a higher return could be realized from alternative investment assets.

We know from our decisional law that in certain circumstances a court may base its support orders on a party's earning capacity. In *Carasso* v. *Carasso*, 80 Conn. App. 299, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004), this court summarized

the relevant law: "In a marital dissolution proceeding, the court may base financial awards on earning capacity rather than actual earned income of the parties. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Internal quotation marks omitted.) Id., 305. Additionally, in determining whether to fix an order on a party's earning capacity rather than reported actual earnings, this court has opined: "When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations. See *Miller* v. *Miller*, [181 Conn. 610, 612, 436 A.2d 279 (1980)]; *Schmidt* v. *Schmidt*, 180 Conn. 184, 189–90, 429 A.2d 470 (1980); *Whitney* v. *Whitney*, 171 Conn. 23, 28, 368 A.2d 96 (1976); *Tobey* v. *Tobey*, 165 Conn. 742, 749, 345 A.2d 21 (1974); *Yates* v. *Yates*, [155 Conn. 544, 548–49, 235 A.2d 656 (1967)]; *Schorsch* v. *Schorsch*, [53 Conn. App. 378, 386, 731 A.2d 330 (1999)]; *Carey* v. *Carey*, 29 Conn. App. 436, 440, 615 A.2d 516 (1992); *Hart* v. *Hart*, 19 Conn. App. 91, 95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 535 (1989)." *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 170, 755 A.2d 946 (2000). Although a review of the cases cited in *Bleuer* reveals that they generally are focused on the issue of imputing earning capacity from employment, no language in any of those cases suggests a requirement that we read the term "earning capacity" narrowly to include only earnings from employment. Given the beneficial purpose of the state's scheme for awarding child support, we see no reason to limit our consideration of earning capacity to earnings from employment only. Thus, in the

proper case, a court may consider the passive earning capacity of assets in framing its support orders.

Our decisional law regarding earning capacity from employment also is instructive in considering passive earnings. As noted, in determining whether to premise an order on earning capacity, a court should be mindful of whether a party wilfully has reduced his or her earnings. See *Miller* v. *Miller*, supra, 181 Conn. 612. Additionally, that line of cases instructs us that the court may consider earning capacity from employment when the evidence shows that the reported amount of earnings is unreasonable. Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings. See, e.g., *McKay* v. *McKay*, 174 Conn. 1, 2, 381 A.2d 527 (1977). *McKay* instructs us, as well, that a court may frame a support order based on a party's earning capacity if a person who fails to disclose any earnings has a history of earnings and the evidence supports the court's conclusion that his loss of earnings is unreasonable. Id.

In sum, in a marital dissolution action the court may frame its support orders based on the parties' earning capacities, including passive earnings, and it is proper for a court to do so when a party has a demonstrable earning capacity but has had unreasonably lower actual earnings.

Applying this rationale to the present facts, we agree that the trial court reasonably could have considered the defendant's passive income in its determination of his earning capacity. We disagree, however, with the court's decision to impute a higher level of passive income on the defendant's investments simply because another investment vehicle may have provided a higher

yield. Rather, we hold that for a court to impute additional investment income capacity to a party in formulating its support orders, the court must find that the party has unreasonably depressed investment income in order to evade a support obligation or that the party's investment strategy is economically unreasonable.

In arriving at this formulation, we are mindful that the analogy between employment income and investment income is limited. For example, a parent with a significant employment earning capacity in an available market who chooses without justification to accept employment for substantially less pay reasonably may be ordered to pay support based on earning capacity rather than actual earnings. Because reasonable investors may disagree over the relative merits of investments with capital growth potential versus those with high present returns, however, a court may not substitute its investment preferences for the investor. It is sufficient for the purpose of assuring a reasonable level of family support that a party's passive income should be considered and, when it is not disclosed, the court may impute a reasonable level of passive income to income producing assets. When passive income is demonstrated, however, it is not the court's role to substitute its economic judgment for the facially reasoned judgment of an investor.

In this instance, the court did not make any findings that the defendant's investment income was unreasonably low; rather, the court simply determined that it could be higher. The defendant provided the court with his 2002 federal income tax return, which demonstrated, by simple calculation, that he earned a 1.25 percent return from his investments during 2002. This documentary evidence was uncontroverted by the plaintiff. Instead, she argued successfully that a higher rate of return could be available from another investment instrument. In light of the absence of findings

challenging the accuracy of the defendant's investment income or the reasonableness of his investments, we conclude that the court abused its discretion by substituting its investment preferences for those of the defendant, thereby imputing a higher return to the defendant's investments. Because the court's determination of the defendant's passive income capacity was an integral part of its overall assessment of the defendant's income, its calculation of the defendant's total income was improper.

## II

The defendant next contends that the court, *Jones, J.*, improperly awarded the plaintiff the right to claim the parties' minor child as a dependency exemption on her federal income tax return for the calendar year 2003 and alternate years thereafter. We agree.

Our determination of this issue involves an interpretation of the language used in Judge Higgins' May 12, 1998 judgment. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) *Sheehan* v. *Balasic*, 46 Conn. App. 327, 332, 699 A.2d 1036 (1997), appeal dismissed, 245 Conn. 148, 710 A.2d 770 (1998). We exercise de novo review over such questions of law. Id., 333 n.4.

The following additional facts and procedural history are relevant to our consideration of this claim. Judge Higgins' May 12, 1998 judgment states in relevant part: "The defendant shall be allowed the income tax exemption for the minor child until such time as the plaintiff's income shall be $25,000 a year and at which point the exemption shall be alternated between the parties annually." Additionally, in his memorandum of decision,

Judge Higgins stated: "The plaintiff has demonstrated a lack of ability and/or desire to obtain and retain full-time employment. She has worked part time as a bank teller and has done some amount of housecleaning. She has a college degree and she appears to be a reasonably intelligent person, although somewhat immature, who has the capacity to earn a substantial income after an appropriate period of rehabilitation and reintroduction into the workforce, if she can arrive at her own self-determination to so do. She will have to arrange her therapeutic sessions and meetings around her full-time work schedule, rather than vice versa." A fair review of this language makes it plain that Judge Higgins was mindful of the difference between earning capacity and earnings. In light of his statement concerning the plaintiff's earning capacity and her then present earning circumstances, it fairly may be deduced that Judge Higgins conditionally awarded the plaintiff the right to claim the parties' child as a dependency exemption on her attaining a certain level of earnings as a form of inducement and reward.

Additionally, although both parties moved to modify the most recent child support order, neither party moved to modify the provision in the original judgment regarding the right to claim the dependency exemption. Thus, it appears that Judge Jones formulated his order on the basis of his conclusion that the plaintiff's earning capacity had reached the level of $25,000 a year, and his determination to equate the notions of earning capacity and actual earnings for this purpose.[4] On appeal, the

---

[4] We need not reach the unasked question of whether, postjudgment, the court retains jurisdiction to modify an order in the dissolution judgment regarding the right to claim the dependency exemption. It is well settled that the court has the authority initially to make such an order. Cf. *Serrano* v. *Serrano*, 213 Conn. 1, 566 A.2d 413 (1989). Whether such an order conferring a right is in the nature of a nonmodifiable property assignment or is more akin to a modifiable support order has yet to be determined. We note, however, that in *Serrano*, then Chief Justice Peters opined that "[t]he authority of the trial court to make this order derives from General Statutes

defendant claims that Judge Jones improperly awarded the plaintiff the income tax dependency exemption because he did not make a finding that her earnings, in fact, had reached the required level. In sum, the defendant agues that Judge Jones improperly conflated the terms "earning capacity" and "earnings" in making this award.

Generally, one's earning capacity is not synonymous with actual earned income. Our Supreme Court has stated that earning capacity "is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." *Lucy* v. *Lucy*, 183 Conn. 230, 234, 439 A.2d 302 (1981). On the basis of our review of the unambiguous language of Judge Higgins' May 12, 1998 decision, we conclude that regardless of her earning capacity, the plaintiff is not entitled to the dependency exemption until such time as her actual annual income reaches $25,000. Because it is undisputed that the plaintiff did not earn $25,000 for the year at issue, Judge Jones improperly awarded the right to claim the dependency exemption to the plaintiff.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

§ 46b-84 (d)"; id., 3 n.3; thus, suggesting, by implication, that the award of the right is akin to child support.