## NANCY WEINSTEIN *v.* LUKE A. WEINSTEIN
## (SC 17425)

Borden, Katz, Palmer, Zarella and Sullivan, Js.

Argued September 7, 2006—officially released January 2, 2007

*Lori Welch-Rubin,* for the appellant (plaintiff).

*Luke A. Weinstein,* pro se, the appellee (defendant).

*Opinion*

SULLIVAN, J. The plaintiff, Nancy Weinstein, appeals, following our grant of certification,[1] from the judgment of the Appellate Court reversing the judgment of the trial court. See *Weinstein* v. *Weinstein,* 87 Conn. App. 699, 867 A.2d 111 (2005). The trial court had increased the child support payments to be made to the plaintiff by the defendant, Luke A. Weinstein,[2] based, in part, on the imputation of greater investment income to the defendant than he actually had realized. The Appellate Court concluded that the trial court improperly had imputed investment income to the defendant in formulating its support orders because there was no evidence that the defendant had depressed unreasonably his investment income in order to evade his child support obligation or that the defendant's investment strategy was economically unreasonable. Id., 706–707. On appeal, the plaintiff claims that the Appellate Court

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly reverse the trial court's judgment on the basis that the trial court had improperly imputed an amount of investment income to the defendant?" *Weinstein* v. *Weinstein,* 273 Conn. 934, 935, 875 A.2d 545 (2005).

[2] Both parties recently appeared before this court, in the case of *Weinstein* v. *Weinstein,* 275 Conn. 671, 694–95, 708, 882 A.2d 53 (2005), wherein we held that the trial court improperly had denied the plaintiff's motion to open the dissolution judgment because the defendant fraudulently had undervalued his ownership interest in a software company. At oral argument before this court in the present appeal, the defendant represented that the parties had entered into a settlement agreement in that case whereby the plaintiff had released all claims against the defendant in exchange for a payment of $350,000. We note that neither our decision in that case nor the settlement agreement render this appeal moot. See footnote 5 of this opinion.

improperly concluded that she was required to prove that the defendant's investment income had been depressed unreasonably and deliberately, or that his investment strategy was unreasonable, before the trial court properly could impute unrealized investment income to the defendant. We agree and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets out the following relevant facts and procedural history. "The court, *Higgins, J.*, dissolved the parties' marriage on May 12, 1998. The judgment included an agreement that the parties would share joint physical custody of their minor child, who was born on January 27, 1996, and that the amount of child support the defendant then was paying would be recomputed 'at the guideline amount in September, 1998.' In November, 1998, pursuant to a September 26, 1998 agreement of the parties, the court, *Arena, J.*, ordered the defendant to pay child support to the plaintiff in the amount of $125 per week and to pay the sum of $661 per month directly to the child's day care provider. In adopting the parties' agreement, the court noted that the amount of support to which the parties had agreed represented an acceptable deviation from the guidelines because the parties equally shared physical custody of their child. Subsequently, on April 30, 2001, the court, *Parker, J.*, increased the defendant's child support obligation to $160 per week because of an increase in his income and in light of the parties' joint custody arrangement.[3]

"On April 17, 2002, the defendant filed a motion for a downward modification of child support, claiming a decrease of his income due to the termination of his employment. In turn, on December 9, 2002, the plaintiff

---

[3] "In reaching the support amount, the court deviated from the amount indicated by the child support guidelines by 50 percent because of the parties' joint physical custody arrangement." *Weinstein* v. *Weinstein*, supra, 87 Conn. App. 701 n.2.

filed a motion for an upward modification of child support, claiming that the defendant's financial circumstances had improved since the previous modification in April, 2001. Following a hearing on December 9, 2002, the court, *Jones, J.*, issued a preliminary memorandum of decision on April 3, 2003, in which it found that the defendant had an annual earning capacity of $125,000 and the plaintiff had an annual earning capacity of $25,000. Additionally, the court scheduled a supplemental hearing to consider the computation of child support under the guidelines based on the parties' earning capacities and their passive incomes. Specifically, the court gave the parties an opportunity to be heard on the question of whether the calculation of the defendant's income should include capital gains realized on certain assets he held and on the question of how to determine the appropriate amount of capital gains and investment income to be included in the calculation of the defendant's income for purposes of establishing a child support order. That hearing took place on April 21, 2003." Id., 701–702.

"At the April 21, 2003 hearing, the defendant produced his 2002 federal income tax return, which indicated that he had received $11,424 of income from an investment account valued at $1,025,000 and $1597 in interest from a money market account worth $25,000. Thus, this evidence showed that the defendant's total passive income in 2002 was $13,021." Id., 703. Therefore, the actual annual return on the defendant's accounts, calculated by dividing the income of $13,021 by the total value of $1,050,000, was 1.24 percent.

During the hearing, the plaintiff adduced evidence establishing that five year treasury bills had an annual return of 2.96 percent as of April 14, 2003. She claimed that the court should impute the income on the investment and the money market account based on this interest rate instead of calculating the support order

using only the defendant's actual income realized from these accounts.

"Subsequently, on July 3, 2003, the court denied the defendant's motion for a reduction in child support and granted the plaintiff's motion for an increase in child support, ordering the defendant to pay the sum of $285 per week. In reaching the amount of child support, the court considered its assessment of the parties' respective earning capacities and not their stated incomes from employment. Additionally, the court attributed the sum of $9724 as income to the plaintiff due to a distribution she received from a family partnership. As to the defendant, the court attributed to him an earning capacity based on his education and work history and also found that his annual income from investments and bank accounts amounted to $31,080." Id., 702.

"In reaching this figure, the court stated: 'The income is imputed on the defendant's Schwab account ($1,025,000) and his checking account ($25,000) shown on his financial affidavit dated December 6, 2002. The interest rate is 2.96 percent, the five year [treasury] bill rate as of April 14, 2003.' " Id., 703–704.

The defendant appealed to the Appellate Court, claiming that, in awarding an increase in child support, "the court improperly (1) imputed greater income to his investments and bank accounts than he actually realized, (2) imputed an unsubstantiated earning capacity to him, (3) failed to deviate from the child support guidelines to account for the parties' joint physical custody arrangement and (4) made an award of child support to the plaintiff that was, in reality, disguised alimony."[4] Id., 700–701. The Appellate Court concluded

---

[4] The defendant also claimed that in its July 3, 2003 ruling, the trial court improperly had awarded to the plaintiff the right to claim the parties' minor child as a dependency exemption for federal income tax purposes. The Appellate Court agreed, and reversed the judgment of the trial court. *Weinstein* v. *Weinstein*, supra, 87 Conn. App. 708–10. The plaintiff does not contest this portion of the Appellate Court's judgment.

that, "for a court to impute additional investment income capacity to a party in formulating its support orders, the court must find that the party has unreasonably depressed investment income in order to evade a support obligation or that the party's investment strategy is economically unreasonable." Id., 707. Because the trial court had not found that the defendant's investment income was unreasonably low, or that the defendant deliberately had suppressed his investment income, the Appellate Court concluded that the trial court had abused its discretion by substituting its investment preferences for the defendant's, thereby imputing a higher rate of return to the defendant's investments. Id., 707–708. Moreover, the Appellate Court concluded that, "[b]ecause the court's determination of the defendant's passive income capacity was an integral part of its overall assessment of the defendant's income, its calculation of the defendant's total income was improper." Id., 708. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case to that court for a recalculation of the child support order without the imputed investment income. Id., 708, 710.

On appeal, the plaintiff claims that the Appellate Court improperly concluded that a party moving for an upward modification of a support order must prove that investment income had been depressed unreasonably and deliberately, or that the investment strategy employed was unreasonable, before the trial court properly can impute unrealized investment income to the nonmoving party. Instead, the plaintiff claims that a court may impute an ordinary rate of return to an asset that yields less than an ordinary rate of return. We agree and, accordingly, reverse the judgment of the Appellate Court.[5]

---

[5] Subsequent to the release of the Appellate Court's decision, the trial court substantially modified the defendant's child support obligations because he had become the custodial parent of the parties' minor child on August 22,

As a preliminary matter, we set forth the appropriate standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Duffy* v. *Flagg*, 279 Conn. 682, 689, 905 A.2d 15 (2006). We must decide, therefore, whether the trial court was legally and logically correct when it decided, under the facts of the case, to impute an ordinary rate of return to an asset that yields less than an ordinary rate of return.

The plaintiff claims that the standard adopted by the Appellate Court for the imputation of investment income is both unsupported by prior case law and essentially impossible to prove. The plaintiff urges us to adopt the standard articulated by the American Law Institute, which provides in relevant part that "[i]n calculating a parent's income, the court may . . . impute an ordinary rate of return to an asset that yields less than an ordinary rate of return. An ordinary rate of return is the prevailing rate of return for secure investments. . . ." American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations (2002) § 3.14 (4) (b). We agree and adopt this sensible approach to the imputation of investment income.[6]

When faced with the similar issue of whether income should be imputed from a supporting spouse's invest-

2005. The modification of the support order does not render the present appeal moot because our conclusion herein can afford the plaintiff practical relief. If the Appellate Court's judgment is upheld, the plaintiff will be required to reimburse the defendant for any overpayments of child support made to her. See *Stein* v. *Stein*, 49 Conn. App. 536, 540, 714 A.2d 1272 (1998); *Mihalyak* v. *Mihalyak*, 30 Conn. App. 516, 522, 620 A.2d 1327 (1993). If, on the other hand, the Appellate Court's judgment is reversed, then no such refund will be required.

[6] Because both the defendant's investment account and bank account were income producing assets, we need not address the question of whether the standard adopted herein applies to assets that do not produce income.

ments for the purpose of determining his or her ability to pay alimony pursuant to an agreement, the New Jersey Supreme Court, in *Miller* v. *Miller*, 160 N.J. 408, 422–23, 734 A.2d 752 (1999), held that additional income beyond what the supporting spouse actually had earned should be imputed to his investments.[7] In that case, the plaintiff had invested approximately $3 million in various growth stocks that paid interest and dividends of approximately $50,000 per year, an annual rate of return of 1.67 percent. Id., 416, 423.

In determining that this 1.67 percent rate of return was inadequate, the New Jersey Supreme Court analogized employment income to investment income, and concluded that both types of income should be treated in the same manner. Specifically, the court noted that, "[g]iven that both income earned through employment and investment income may be considered in a court's calculation of an alimony award, it follows that there is no functional difference between imputing income to the supporting spouse earned from employment versus that earned from investment. In both instances, the supporting spouse is required to earn more from an 'asset,' either his or her human capital in the form of employment or his or her investment capital, or risk having more income imputed to him or her." Id., 423. Therefore, the court in *Miller* concluded that the "plaintiff, as the supporting spouse, could invest his substantial capital assets to yield more than the approximately 1.6 percent interest he is currently earning on his growth stock investments. Doing so would not require that

---

[7] Although they have not discussed the proper rate of return to use for imputation, many other states have held that additional income beyond what the supporting spouse actually had earned should be imputed to investments in calculating support obligations. See *Roberts* v. *Roberts*, 802 So. 2d 230, 237 (Ala. App. 2001); *In re Marriage of Bregar*, 952 P.2d 783, 786 (Colo. App. 1997); *Pagar* v. *Pagar*, 9 Mass. App. 1, 7–8, 397 N.E.2d 1293 (1980); *Kay* v. *Kay*, 37 N.Y.2d 632, 637, 339 N.E.2d 143, 376 N.Y.S.2d 443 (1975), superseded by statute on other grounds.

[the] plaintiff deplete his considerable principal; it only means that [the] plaintiff could invest his principal differently in higher yield investment options available to him, much in the same way that an underemployed spouse could obtain a higher paying job available to him to make a more productive use of his human capital." Id.

This court also has recognized that employment income may be imputed to the supporting spouse. "It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income." *Lucy* v. *Lucy*, 183 Conn. 230, 234, 439 A.2d 302 (1981). "Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 372, 710 A.2d 717 (1998). Neither party disputes that a court properly may impute earning capacity from employment, as the trial court did for both parties in the present case. While "it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations"; *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 170, 755 A.2d 946 (2000); we never have required a finding of bad faith before imputing income based on earning capacity. We can perceive no reason to adopt a different standard for the ascertainment of investment income than the one we employ for the ascertainment of earning capacity.

Indeed, the role of both earning capacity and investment income are governed by General Statutes § 46b-84, which is entitled, "[p]arents' obligation for maintenance of minor child" and provides that, "(d) [i]n determining whether a child is in need of maintenance

and . . . the amount thereof, the court shall consider the . . . earning capacity, amount and sources of income [and] estate . . . of each of the parents . . . ." There is no indication in § 46b-84 (d) that the trial court should calculate the "earning capacity" and "amount and sources of income" of each parent in a different manner.

We recognize that, under the American Law Institute standard adopted herein, there may be circumstances under which an ordinary rate of return should not be imputed to the supporting spouse's investment accounts. Unlike the standard adopted by the Appellate Court, however, the burden under this standard is on the supporting spouse to show that the low rate of return on his investments is reasonable; the burden is not on the other spouse to show that the rate is unreasonable. We believe that the party holding the investment account is in the better position to explain what circumstances led to the choice of that investment. It would be difficult, if not impossible, for the other party to prove that the investment strategy was economically unreasonable without knowledge of all the information that led to the investment decision. Accordingly, we conclude that the better course is to permit the trial court to impute income to investment accounts that yield less than an ordinary rate of return and to place the burden on the party holding the investment to show why the imputation of income is improper in the given circumstance.[8]

---

[8] The American Law Institute discusses such a situation in the following example. "Linda earns a substantial salary as a manager of a closely held corporation owned entirely by Linda and her siblings. Linda's ownership interest, represented by stock that is not publicly traded, is valued at $300,000. The stock has never paid any dividends. Linda must retain ownership of the stock in order to maintain her position and influence in the business. The court should not impute income to Linda's interest in the closely held family corporation that employs her. Her need to maintain her job and influence in the firm, advantages that rebound to the benefit of her children, render her unable to liquidate and hence make alternative use of this asset." American Law Institute, supra, § 3.14 (4) (b), comment d,

Finally, contrary to the defendant's claim, the American Law Institute standard does not force any particular investment decision on the supporting parent because the parent is free to invest his money as he sees fit. The standard provides only that the parent, rather than the minor child, must bear the burden of the parent's investment strategy if that strategy yields less than the ordinary rate of return.

In the present case, the trial court implicitly concluded that a 1.24 percent rate of return on investments of $1,050,000 was not an ordinary rate of return and, therefore, imputed additional investment income to the defendant in fashioning its support orders. In light of our conclusion herein, the trial court's imputation of an ordinary rate of return to the defendant's investments was proper.[9]

Having concluded that the trial court's decision to impute an ordinary rate of return on the defendant's investment was legally and logically correct, we must next address whether the trial court used a proper ordinary rate of return to impute income to the underperforming assets. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province

illustration 3. We note that there may be countless other situations in which a party is justifiably unable to earn an ordinary rate of return on his or her assets and, therefore, it would be improper to impute unrealized income. In the present case, however, the defendant has put forth no evidence to justify earning less than an ordinary rate of return.

[9] Indeed, in promulgating the standard, the American Law Institute contemplated that it would apply to a factual scenario nearly identical to the one in the present case. In that scenario, "Linda has invested savings in growth equities, which produce little or no current income. The court should impute an ordinary rate of return to Linda's portfolio of growth equities." American Law Institute, supra, § 3.14 (4) (b), comment d, illustration 3.

of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 122, 124–25, 902 A.2d 729 (2006).

At the April 21, 2003 hearing, the plaintiff put forth evidence establishing the 2.96 percent return on five year treasury bills as of that date. The defendant did not present evidence of an alternative ordinary rate of return or of an alternative type of secure investment. Nor did the defendant dispute that the 2.96 percent return on five year treasury bills was the prevailing rate of return for a secure investment. Although the defendant claims on appeal that the trial court improperly imputed an ordinary rate of return on his investments, he makes no claim that, if we affirm that ruling, we should apply a different prevailing rate. Accordingly, we conclude that the trial court did not abuse its discretion in imputing income in the amount of $18,059,[10]

[10] The defendant did not dispute that both the investment account valued at $1,025,000 and the money market account valued at $25,000 were investment accounts to which unrealized income may be imputed under certain circumstances. We recognize that there may be situations in which it would be improper to impute income to all amounts held in income producing assets because some amounts may be necessary for living expenses and cannot properly be deemed an investment. Because the defendant did not claim in

the difference between the income calculated using an ordinary rate of return, the 2.96 percent return on five year treasury bills in this case,[11] and the defendant's actual income.

For the foregoing reasons, we conclude that, in calculating a parent's income for purposes of a support obligation, the trial court may impute an ordinary rate of return to an asset that yields less than an ordinary rate of return. Accordingly, we reverse the judgment of the Appellate Court. Because the Appellate Court did not reach the defendant's three other claims on appeal, namely, that the trial court improperly imputed an unsubstantiated earning capacity, failed to deviate from the child support guidelines to account for the parties' joint physical custody arrangement, and awarded child support to the plaintiff that was, in reality, disguised alimony, we remand the case to that court for a resolution of these claims. *Weinstein* v. *Weinstein,* supra, 87 Conn. App. 700–701 and n.1.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims.

In this opinion the other justices concurred.

the trial court that the money held in his investment accounts was necessary to pay for his living expenses, the trial court correctly imputed income on the entire $1,050,000.

[11] We express no opinion as to whether the return on five year treasury bills is the proper rate to use as the ordinary rate of return in all future cases. We conclude only that the trial court's use of that rate of return was not in dispute in this case. We recognize that the trial court did not expressly apply the American Law Institute standard that we have adopted in this case. We conclude, however, that there is no need to remand the case to the trial court so that it may apply that standard because the defendant argued to the trial court that the return on his investment was reasonable under the circumstances and the trial court implicitly rejected that claim. Accordingly, the result would not have been any different if the trial court had applied the standard that we adopt herein.