## NANCY WEINSTEIN *v.* LUKE A. WEINSTEIN
## (AC 24855)

Flynn, C. J., and Bishop and McLachlan, Js.

Argued September 5—officially released November 20, 2007

*Luke A. Weinstein*, pro se, the appellant (defendant).

*Lori Welch-Rubin*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This appeal returns to this court on remand from our Supreme Court; *Weinstein* v. *Weinstein*, 280 Conn. 764, 911 A.2d 1077 (2007); for resolution of the remaining claims of the defendant, Luke A. Weinstein, that the trial court improperly modified the child support order in that it (1) imputed an

unsubstantiated earning capacity to him, (2) failed to deviate from the child support guidelines to account for the parties' joint physical custody arrangement and (3) awarded child support to the plaintiff, Nancy Weinstein, that was, in reality, disguised alimony. We reverse the judgment of the trial court.

The following facts and procedural history, set forth by the Supreme Court, are relevant to the resolution of the issues before us. "The court, *Higgins, J.*, dissolved the parties' marriage on May 12, 1998. The judgment included an agreement that the parties would share joint physical custody of their minor child, who was born on January 27, 1996, and that the amount of child support the defendant then was paying would be recomputed at the guideline amount in September, 1998. In November, 1998, pursuant to a September 26, 1998 agreement of the parties, the court, *Arena, J.*, ordered the defendant to pay child support to the plaintiff in the amount of $125 per week and to pay the sum of $661 per month directly to the child's day care provider. In adopting the parties' agreement, the court noted that the amount of support to which the parties had agreed represented an acceptable deviation from the guidelines because the parties equally shared physical custody of their child. Subsequently, on April 30, 2001, the court, *Parker, J.*, increased the defendant's child support obligation to $160 per week because of an increase in his income and in light of the parties' joint custody arrangement.[1]

"On April 17, 2002, the defendant filed a motion for a downward modification of child support, claiming a decrease of his income due to the termination of his employment. In turn, on December 9, 2002, the plaintiff

[1] "In reaching the support amount, the court deviated from the amount indicated by the child support guidelines by 50 percent because of the parties' joint physical custody arrangement." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 280 Conn. 766 n.3.

filed a motion for an upward modification of child support, claiming that the defendant's financial circumstances had improved since the previous modification in April, 2001. Following a hearing on December 9, 2002, the court, *Jones, J.*, issued a preliminary memorandum of decision on April 3, 2003, in which it found that the defendant had an annual earning capacity of $125,000 and the plaintiff had an annual earning capacity of $25,000. Additionally, the court scheduled a supplemental hearing to consider the computation of child support under the guidelines based on the parties' earning capacities and their passive incomes. Specifically, the court gave the parties an opportunity to be heard on the question of whether the calculation of the defendant's income should include capital gains realized on certain assets he held and on the question of how to determine the appropriate amount of capital gains and investment income to be included in the calculation of the defendant's income for purposes of establishing a child support order. That hearing took place on April 21, 2003. . . .

"At the April 21, 2003 hearing, the defendant produced his 2002 federal income tax return, which indicated that he had received $11,424 of income from an investment account valued at $1,025,000 and $1597 in interest from a money market account worth $25,000. Thus, this evidence showed that the defendant's total passive income in 2002 was $13,021. . . . Therefore, the actual annual return on the defendant's accounts, calculated by dividing the income of $13,021 by the total value of $1,050,000, was 1.24 percent. . . .

"Subsequently, on July 3, 2003, the court denied the defendant's motion for a reduction in child support and granted the plaintiff's motion for an increase in child support, ordering the defendant to pay the sum of $285 per week. In reaching the amount of child support, the

court considered its assessment of the parties' respective earning capacities and not their stated incomes from employment. Additionally, the court attributed the sum of $9724 as income to the plaintiff due to a distribution she received from a family partnership. As to the defendant, the court attributed to him an earning capacity based on his education and work history and also found that his annual income from investments and bank accounts amounted to $31,080. . . .

"In reaching this figure, the court stated: The income is imputed on the defendant's Schwab account ($1,025,000) and his checking account ($25,000) shown on his financial affidavit dated December 6, 2002. The interest rate is 2.96 percent, the five year [treasury] bill rate as of April 14, 2003. . . .

"The defendant appealed to the Appellate Court, claiming that, in awarding an increase in child support, the court improperly (1) imputed greater income to his investments and bank accounts than he actually realized, (2) imputed an unsubstantiated earning capacity to him, (3) failed to deviate from the child support guidelines to account for the parties' joint physical custody arrangement and (4) made an award of child support to the plaintiff that was, in reality, disguised alimony. . . .

"[T]he Appellate Court concluded that the trial court had abused its discretion by substituting its investment preferences for the defendant's, thereby imputing a higher rate of return to the defendant's investments. . . . Moreover, the Appellate Court concluded that, [b]ecause the court's determination of the defendant's passive income capacity was an integral part of its overall assessment of the defendant's income, its calculation of the defendant's total income was improper. . . . Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case to that court

for a recalculation of the child support order without the imputed investment income." (Citations omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 280 Conn. 766–69.

Our Supreme Court reversed this court's judgment and concluded that "the trial court did not abuse its discretion in imputing income in the amount of $18,059, the difference between the income calculated using an ordinary rate of return, the 2.96 percent return on five year treasury bills in this case, and the defendant's actual income. For the foregoing reasons, we conclude that, in calculating a parent's income for purposes of a support obligation, the trial court may impute an ordinary rate of return to an asset that yields less than an ordinary rate of return. Accordingly, we reverse the judgment of the Appellate Court. Because the Appellate Court did not reach the defendant's three other claims on appeal, namely, that the trial court improperly imputed an unsubstantiated earning capacity, failed to deviate from the child support guidelines to account for the parties' joint physical custody arrangement, and awarded child support to the plaintiff that was, in reality, disguised alimony, we remand the case to that court for a resolution of these claims." Id., 775–76. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth our standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial

court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Angle* v. *Angle*, 100 Conn. App. 763, 771–72, 920 A.2d 1018 (2007). Mindful of these principles, we turn to the issues at hand.

I

The defendant first claims that the court imputed an unsubstantiated earning capacity to him of $156,080.[2] Because we conclude that the record contains ample

[2] We note that the $156,080 earning capacity figure found by the court is comprised of two distinct amounts, namely, $125,000 and $31,080. The court stated: "As to [the] defendant, Luke Weinstein, the court finds that he has income on assets of $31,080, which, when added to his annual earning capacity of $125,000, brings his total income annually to $156,080. . . . The income [as to the $31,080] is imputed on the defendant's Schwab account ($1,025,000) and his checking account ($25,000) shown on his financial affidavit, dated December 6, 2002. The interest rate is 2.96 percent—the five year T bill rate as of April 14, 2003."

As to the $31,080 sum, the defendant's sole argument is that the court applied the incorrect interest rate to his investment and bank accounts when it calculated his earning capacity from this financial resource. Our Supreme Court, however, previously resolved this issue and held that the court applied the correct interest rate. See *Weinstein* v. *Weinstein*, supra, 280 Conn. 764. Moreover, the court stated: "The defendant did not dispute that both the investment account valued at $1,025,000 and the money market account valued at $25,000 were investment accounts to which unrealized income may be imputed under certain circumstances. We recognize that there may be situations in which it would be improper to impute income to all amounts held in income producing assets because some amounts may be necessary for living expenses and cannot properly be deemed an investment. Because the defendant did not claim in the trial court that the money held in his investment accounts was necessary to pay for his living expenses, the trial court correctly imputed income on the entire $1,050,000." Id., 775 n.10. Accordingly, we address the defendant's arguments only as to the $125,000 amount.

evidence to support the court's determination that the defendant had an earning capacity of $125,000, we disagree.

"In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in [General Statutes § 46b-84] (child support)." *Bartel* v. *Bartel,* 98 Conn. App. 706, 711, 911 A.2d 1134 (2006). "General Statutes § 46b-84 [d] enumerates a number of factors which the court must consider in determining the respective abilities of the parents to provide maintenance for a child and the amount thereof." *Lucy* v. *Lucy,* 183 Conn. 230, 233, 439 A.2d 302 (1981). General Statutes § 46b-84 (d) provides in relevant part: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employ-ability of each of the parents . . . ."

Furthermore, "[i]t is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein,* supra, 280 Conn. 772. "While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realisti-cally be expected to earn considering such things as his vocational skills, employability, age and health. . . . Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on

capacity rather than actual earnings." (Citation omitted; internal quotation marks omitted.) *Dees* v. *Dees*, 92 Conn. App. 812, 816, 887 A.2d 429 (2006). Moreover, "[g]iven the beneficial purpose of the state's scheme for awarding child support, we see no reason to limit [the] consideration of earning capacity to earnings from employment only." *Weinstein* v. *Weinstein*, 87 Conn. App. 699, 705, 867 A.2d 111 (2005), rev'd on other grounds, 280 Conn. 764, 911 A.2d 1077 (2007).

After considering the testimony and exhibits presented at the hearing, the court found the following: "[The] [d]efendant is forty-eight years of age and in good health. He has a master's of business administration degree. He was the vice president for product development and had an ownership interest in a company known as Product Technologies. In July, 1988, he signed a contract to sell his interest in Product Technologies . . . [to] ICL International Computer. As a result of this purchase, he received $1.4 million and a consulting-employment contract, which paid him $150,000 per year for a period of three years. The defendant has been employed since October 1, 2001. He is now receiving approximately $51,000 per year as a consultant.

"Prior to the judgment of dissolution, the defendant acquired a one-third interest in a Piper airplane. Since the dissolution, he has invested an additional $50,000 in the plane, which he currently uses when he travels to consulting assignments." On the basis of this evidence, the court determined that "the defendant's education and business acumen confer upon him an annual gross earning capacity of $125,000."

On the basis of those findings, the court reasonably could have imputed an earning capacity of $125,000 to the defendant. Thus, the court did not abuse its discretion, as its determination was neither contrary to the law nor clearly erroneous.

II

The defendant next claims that the court on July 3, 2003, improperly modified the existing child support order. Specifically, the defendant claims that the court improperly modified the support order without accounting for the shared custody agreement in the dissolution decree. In regard to this claim, this court directed the parties to file simultaneous supplemental briefs addressing the following additional issue relating to the defendant's claim that the court improperly modified the child support order: "Did the trial court abuse its discretion in modifying the child support order without a finding of either a substantial change in the circumstances of either party or that the guideline indicated amount ($285) was at least fifteen percent greater than the guideline indicated amount at the time of the last order on April 30, 2001 ($320)?"

"General Statutes § 46b-86[3] governs the modification of a child support order after the date of a dissolution judgment." (Internal quotation marks omitted.) *Foster* v. *Foster*, 84 Conn. App. 311, 321, 853 A.2d 588 (2004). Section 46b-86 (a) permits the court to modify child support orders in two alternative circumstances. Pursuant to this statute, a court may not modify a child support order unless there is first either "(1) a showing of a substantial change in the circumstances of either party

[3] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of . . . support . . . may at any time thereafter be continued, set aside, altered or modified . . . upon a showing of a substantial change in circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. . . ."

or (2) a showing that the final order for child support substantially deviates from the child support guidelines . . . ." *Santoro* v. *Santoro*, 70 Conn. App. 212, 218, 797 A.2d 592 (2002). "Both the substantial change of circumstances and the substantial deviation from child support guidelines' provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole . . . ." (Internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 174, 829 A.2d 885 (2003). In the present matter, the court improperly modified the support order because neither of these two threshold provisions was satisfied.

As to the "substantial change of circumstances" provision of § 46b-86 (a), "[w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification." (Citation omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 92, 699 A.2d 1029 (1997). "A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper." *Savage* v. *Savage*, 25 Conn. App. 693, 696, 596 A.2d 23 (1991); see *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980); *Arena* v. *Arena*, 92 Conn. App. 463, 467, 885 A.2d 765

(2005) ("[O]nce the trial court finds a substantial change in circumstances, it can properly consider a motion for modification . . . . After the evidence introduced in support of the substantial change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification, [that evidence] comes into play in the trial court's structuring of the modification orders." [Internal quotation marks omitted.]); *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 350, 885 A.2d 194 (2005); *Grosso* v. *Grosso*, 59 Conn. App. 628, 631, 758 A.2d 367, cert. denied, 254 Conn. 938, 761 A.2d 761 (2000); *Hayward* v. *Hayward*, 53 Conn. App. 1, 9, 752 A.2d 1087 (1999); *Crowley* v. *Crowley*, supra, 92 ("When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion [to modify]." [Citation omitted.]). "The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal." (Citation omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 738, 638 A.2d 1060 (1994). Rather, "[t]he court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . The inquiry, then, is limited to a comparison between the current conditions and the last court order." (Citation omitted; internal quotation marks omitted.) *Crowley* v. *Crowley*, supra, 92. "The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Internal quotation marks omitted.) *Santoro* v. *Santoro*, supra, 70 Conn. App. 218–19.

In the present case, although the court set forth several findings in its memorandum of decision regarding

the parties' incomes both presently and at the time the prior order was entered, the court did not make a finding that there had been a substantial change in the circumstances of either party. This preliminary finding, however, is a prerequisite to making a modification on the basis of a substantial change of circumstances. By not first finding that there was a substantial change in the circumstances of one of the parties, the court failed to adhere to the mandates of § 46b-86 (a). See id., 219. The factual findings made by the court do not replace the necessity of a specific finding of a substantial change in circumstances. The plaintiff asks us to infer that the court found a substantial change in circumstances from the fact that it did modify the support order. If we were to find from the record that the facts presented to the court established a substantial change of circumstances, we would be engaging in fact-finding, a function not the province of this court. See *Branford* v. *Van Eck*, 86 Conn. App. 441, 446–47, 861 A.2d 560 (2004), cert. denied, 272 Conn. 922, 867 A.2d 839 (2005). Moreover, the court's conclusions regarding the parties' finances would belie a finding of a substantial change of circumstances warranting an upward modification.

The record reveals that from the date of the prior order on April 30, 2001, to July 3, 2001, the date of the order under appeal, the plaintiff's net weekly income *increased* from $182.50 to $533, and the defendant's net weekly income actually *decreased* from $2014 to $1953. As a consequence, the overall presumptive child support figure assessed to the defendant *decreased* from $320 to $285. Faced with this calculus, the plaintiff asserts that even though the defendant's income decreased and her income increased, those changes satisfy the statutory requirement of a substantial change of circumstances warranting an upward modification. By this reasoning, one whose financial circumstances

had worsened substantially could be obligated to pay increased child support and, inversely, one whose circumstances had improved substantially could lower his or her support obligation. We reject this argument as specious. In this instance, in which the change was due to a reduction in the payor's earnings and an increase in the payee's earnings, that change alone could not warrant an upward modification of the payor's obligation. See *State* v. *Valinski*, 53 Conn. App. 23, 30, 731 A.2d 311 (1999) (legislation should be interpreted rationally to obtain rational result consistent with its legislative purpose), rev'd on other grounds, 254 Conn. 107, 756 A.2d 1250 (2000).

Second, and pursuant to the "substantial deviation from the guidelines" provision of § 46b-86 (a), "[a] court has the power to modify a child support order on the basis of a substantial deviation from the guidelines independent of whether there has been a substantial change in the circumstances of a party." *Mullin* v. *Mullin*, 28 Conn. App. 632, 635, 612 A.2d 796 (1992). In its memorandum of decision, the court stated that "[t]he court finds that incorporating the . . . net weekly income figures into the calculus of the child support guidelines produces a presumptive child support figure, assessed to the defendant, of $285 per week. This number is 'substantially greater' than the current order of $160 per week." The court's recitation suggests that the court also concluded, as a ground for modifying the child support order, that the final order for child support entered in 2001 ($160) substantially deviated from the child support guideline figure calculated in 2003 ($285) pursuant to § 46b-86 (a).

As noted, however, § 46b-86 (a) provides in relevant part that "any final order for the periodic payment of . . . support . . . may . . . be . . . modified . . . upon a showing that the final order for child support substantially deviates from the child support guidelines

established pursuant to section 46b-215a, *unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate.* There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. . . ." (Emphasis added.) Thus, in determining whether a modification is warranted on this basis, one must calculate the guideline support amount to determine if the final order, or prior order, is at least 15 percent higher or lower than the guideline indicated amount. However, "once the court enters an order of child support that substantially deviates from the guidelines, and makes a specific finding that the application of the amount contained in the guidelines would be inequitable or inappropriate, as determined by the application of the deviation criteria established in the guidelines, that particular order is *no longer modifiable* solely on the ground that it substantially deviates from the guidelines." (Emphasis added.) *McHugh* v. *McHugh*, 27 Conn. App. 724, 728–29, 609 A.2d 250 (1992). The reasoning of this decisional guidance is clear. An order based on the presumptive amount indicated by the guidelines may regularly be substantially different from an order based on a deviation from the guidelines. Such appears to be the factual and procedural posture in this instance. When the court entered its order on April 30, 2001, it found that the presumptive support obligation of the defendant was $320 a week, but it ordered him to pay $160 a week on the basis of the parties' joint physical custody arrangement, a permitted deviation criterion pursuant to the child support guidelines. See Regs., Conn. State Agencies § 46b-215a-3 (b) (6) (A). Thus, because the 2001 order was not a guideline order, but was rather a deviation from the guidelines, that

order was not modifiable pursuant to the substantial deviation prong of § 46b-86 (a).[4]

Because the existing child support order of $160 per week was an order entered on the basis of a deviation from the guidelines' presumptive amount, the plaintiff is entitled to a modification only on a showing of a substantial change in circumstances. In the present case, the court did not find that a substantial change in circumstances existed entitling the plaintiff to modification, nor indeed does it appear that such a change exists. Therefore, we conclude that the court improperly modified the child support order without first satisfying the threshold criterion of finding a substantial change in circumstances as set forth in § 46b-86 (a).[5]

The judgment is reversed and the case is remanded with direction to deny the motion to modify.

In this opinion the other judges concurred.

---

[4] Moreover, the presumptive child support amount pursuant to the guidelines found by the court on April 30, 2001, before the court deviated from it due to the joint custody arrangement, was $320. The guideline amount at the time of the hearing on July 3, 2003, was $285. Even if we were to compare these two figures, not only would it represent a *downward* change in the defendant's support obligation, which would not warrant an increase in his child support obligation, but it would be a difference of less than 15 percent and, thus, not a substantial deviation as required by General Statutes § 46b-86 (a).

[5] Because we reverse the judgment on this ground, we need not address the defendant's claim that the court improperly awarded child support to the plaintiff that was, in reality, disguised alimony. Indeed, on the basis of our conclusion as to the factual findings made by the court as to the defendant's earning capacity, the defendant's claim is without basis in fact or law.

Additionally, we decline the defendant's invitation to devise a formula providing for a deviation from the child support guidelines on the basis of shared physical custody. We do note, however, that the section of the guidelines concerning shared physical custody as a deviation criterion is, at best, perplexing, as the section refers simultaneously to shared physical custody while also using the terms "custodial parent" and "noncustodial parent." In a shared parenting context, one must wonder which term applies to whom. Nevertheless, we leave legislation to the legislature and, as well, we decline to offer an advisory opinion even though the circumstance may thirst for clarification. See *National Amusements, Inc.* v. *East Windsor*, 84 Conn. App. 473, 485, 854 A.2d 58 (2004).