## ELIZABETH BARTEL *v.* JAMES A. BARTEL, JR.
### (AC 26131)

Flynn, C. J., and Schaller and Harper, Js.

Argued September 11—officially released December 19, 2006

*Rebekah L. Sprano*, with whom, on the brief, was *Daniel Shepro*, for the appellant (plaintiff).

*James A. Bartel, Jr.*, pro se, the appellee (defendant).

*Opinion*

HARPER, J. In this marital dissolution appeal, the plaintiff, Elizabeth Bartel, challenges the financial orders issued in the trial court's judgment dissolving her marriage to the defendant, James A. Bartel, Jr. The plaintiff claims that the court improperly (1) entered financial orders because it relied on inaccurate and conflicting representations of the defendant's financial status, (2) issued inconsistent judgments in its multiple decisions and (3) failed to rule on three of the plaintiff's pendente lite motions. We affirm in part and reverse in part the judgment of the trial court.

The following facts are relevant to the plaintiff's appeal. The parties were married on October 7, 1995, and have two minor children. On December 15, 2003,

the plaintiff filed a complaint for dissolution of the parties' marriage on the ground that the marriage had broken down irretrievably.

After a two day trial, the court filed a memorandum of decision on August 26, 2004, dissolving the parties' marriage. The court later issued a supplemental memorandum of decision on September 9, 2004, that addressed the issues of child support and the sale of the marital home, both of which had been omitted inadvertently from its August 26, 2004 decision.

On September 10, 2004, the plaintiff filed a motion to open the dissolution judgment, arguing that the judgment did not resolve all of the issues raised at trial and contained various errors concerning the parties' respective incomes. In a third memorandum of decision filed on October 19, 2004, the court stated that it was going to treat the plaintiff's motion as a motion to clarify the dissolution judgment. The court then denied the motion, although it also resolved some of the claims raised by the plaintiff.

On November 5, 2004, the plaintiff filed a motion to open and reargue the October judgment and orders. The court denied the motion in an oral decision issued on December 2, 2004. This appeal followed.[1]

I

The plaintiff first claims that the court abused its discretion when it issued its financial orders, including those relating to the division of the marital property and the awarding of alimony and child support. Specifically, the plaintiff argues that the court improperly

[1] Due to the defendant's failure to file his brief in a timely manner, this court issued an order on March 22, 2006, stating that the appeal would be considered solely on the basis of the plaintiff's brief and the record. For the same reason, the defendant was not permitted to participate in oral argument before this court.

determined the defendant's net income because it (1) relied on inaccurate information contained in the defendant's financial affidavit and did not include his annual bonus in his gross income, and (2) did not increase the defendant's gross income to offset his excessive federal income tax withholdings.

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Rummel* v. *Rummel*, 33 Conn. App. 214, 220–21, 635 A.2d 295 (1993).

The record reveals the following pertinent facts with respect to the plaintiff's claim that the court improperly calculated the defendant's weekly net income. On August 26, 2006, the defendant filed a financial affidavit with the court, and both parties filed worksheets for the child support and arrearage guidelines (support worksheets). The defendant reported on his financial affidavit that he had a weekly gross income of $2278.85, with $777.97 in allowable deductions, yielding a weekly net income of $1500.88. Yet, the defendant's support worksheet showed a weekly gross income of $2635, with $848 in deductions, for a weekly net income of $1787. It is undisputed that the $356.15 difference between the two statements of the defendant's weekly gross income resulted from the omission of his $18,000 annual bonus from his financial affidavit.

In its August 26, 2004 memorandum of decision, the court found that the defendant earned an annual gross salary of $118,000 in 2003 and expected to receive an $18,000 to $24,000 bonus in 2004. The court further found that the defendant had a weekly net income of $1603, which it calculated by combining the defendant's $103 weekly contribution to his 401 (k) plan with his reported weekly net income of $1500. Finally, the court determined that the defendant's weekly expenses were $1888 as stated on his financial affidavit.

On the basis of those findings, which represented "the net income earned by the parties as shown on their respective financial affidavits," the court issued various financial orders, including a three year, nonmodifiable weekly alimony award of $400 to the plaintiff. The court's later memoranda of decision contained other financial orders covering division of personal property and real estate, unreimbursed medical, dental and child care costs, education expenses, disbursement of funds from the defendant's retirement accounts and unpaid state income taxes.

In formulating its various financial orders on August 26 and October 19, 2004, the court expressly relied on the defendant's financial affidavit. As a consequence, the financial orders rendered on those dates were premised on the exclusion of the defendant's bonus from his net income. In contrast, the court explicitly based its September 9, 2004 child support order on the net income figures contained in the plaintiff's support worksheet, all of which included the defendant's bonus.

On appeal, the plaintiff alleges that all financial orders should be set aside because of the court's miscalculation of the defendant's weekly net income due to its failure to account for the defendant's receipt of an annual bonus. To support her argument, the plaintiff draws our attention to testimonial evidence and the

defendant's 2003 W-2 forms and 2004 pay stubs, all of which confirm that the defendant received an $18,000 bonus in March, 2004. The plaintiff also refers to § 46b-215a-1 of the Regulations of Connecticut State Agencies, which defines the terms used in the child support and arrearage guidelines (child support guidelines). Because the child support guidelines mandate that the court take bonuses into consideration when awarding child support, the plaintiff reasons that bonuses similarly must be included when issuing other types of financial orders.[2]

In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in General Statutes §§ 46b-81 (division of marital property), 46b-82 (alimony) and 46b-84 (child support). All three statutory provisions require consideration of the parties' "amount and sources of income" in determining the appropriate division of property and size of any child support or alimony award.[3]

---

[2] Pursuant to the regulations, "net income" is calculated by subtracting allowable deductions from gross income. Regs., Conn. State Agencies § 46b-215a-1 (17).

"Gross income" is defined as "the average weekly earned and unearned income from all sources before deductions," with certain sources of income being specifically included and excluded from the definition. Regs., Conn. State Agencies, § 46b-215a-1 (11). Expressly enumerated in the list of included items are "commissions, bonuses, and tips . . . ." Regs., Conn. State Agencies, § 46b-215a-1 (11) (A) (iii).

[3] General Statutes § 46b-81 (c) provides in relevant part that trial courts shall consider various factors when allocating marital property among the parties, including "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . ."

General Statutes § 46b-82 (a) provides in relevant part that trial courts should determine the appropriate amount of alimony based on "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

General Statutes § 46b-84 (d) provides in relevant part that in fashioning a child support award, trial courts must consider "the age, health, station,

Our Supreme Court has emphasized the importance of using an expansive definition of income when formulating financial orders during the course of marriage dissolution proceedings. See *Unkelbach* v. *McNary*, 244 Conn. 350, 360, 710 A.2d 717 (1998) ("our approach has been to interpret the concept of income broadly so as to include in income items that increase the amount of resources available for support purposes"). Adopting a flexible definition of income, the court has explained, ensures that each spouse fulfills his or her continuing duty to support one another and each receives his or her equitable share of the marital assets. See *McPhee* v. *McPhee*, 186 Conn. 167, 170, 440 A.2d 274 (1982) ("purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his" [internal quotation marks omitted]). In keeping with this notion, the court has upheld an alimony award that counted as net income "regularly and consistently received gifts, whether in the form of contributions to expenses or otherwise . . . to the extent that they increase the amount of income available for support purposes." *Unkelbach* v. *McNary*, supra, 360–61.

In this case, the court found in its August 26, 2004 memorandum of decision that the defendant expected to receive an $18,000 to $24,000 bonus in 2004. Yet, the court later concluded that the defendant's weekly gross income was $2278, a figure that did not include the anticipated bonus. Simple arithmetic reveals that exclusion of the defendant's bonus results in a $346 to $462 decrease in the defendant's weekly gross income.

Allowing a party to disregard a substantial source of income in a dissolution case directly contravenes the policy established by the legislature and our Supreme

occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents . . . ."

Court concerning the proper determination of financial orders. Parties in dissolution proceedings should not be permitted to omit unilaterally legitimate "sources of income" from their financial affidavits and thereby cause a substantial reduction in the amount of net income available for support purposes. Thus, although acknowledging the highly deferential review accorded to judgments relating to family matters, we are persuaded that the bonus, as one of the defendant's "sources of income," should have been factored into the court's determination of the defendant's weekly net income.[4] We must conclude, therefore, that its exclusion constituted a misapplication of the law and an abuse of discretion.

Unlike the financial orders, the child support order was determined by factoring the defendant's bonus into the calculation. Nevertheless, in the interest of fairness and finality, we deem it best to order a remand of all financial orders. "The issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Ludgin* v. *McGowan*, 64 Conn. App. 355, 359, 780 A.2d 198 (2001); see also *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999) (noting "when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the

---

[4] During trial, the defendant argued that he should not have to include his annual bonus as income on his financial affidavit because it "is not a guaranteed bonus." This argument is unavailing, however, given the expansive definition of income used when crafting financial orders in dissolution proceedings. We also note that "[w]here the past gratuities have been made on a regular basis . . . the court may reasonably assume that those contributions will continue. If they should terminate, any . . . award may be modified." (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, supra, 244 Conn. 361.

trial court to reconsider all of the financial orders"). Accordingly, we reverse the judgment with respect to all financial orders.[5]

## II

The plaintiff next claims that the court abused its discretion when it failed to rule on three motions that the plaintiff filed before the trial. Specifically, the plaintiff contends that the court never issued a decision on the issues raised in her motion for orders, filed April 12, 2004, "motion for contempt pendente lite," filed May 14, 2004, and "motion for contempt and request for immediate compliance pendente lite," dated June 30, 2004.

Following the commencement of the action for dissolution in December, 2003, both parties filed motions for temporary alimony and support. On January 15, 2004, the court issued an order awarding the plaintiff a weekly sum of $440 in child support and $819 in alimony. The terms of the order provided, inter alia, that the defendant would pay various bills on the plaintiff's behalf beginning on January 5, 2004. Included among the bills were the electric, gas, telephone and cable bills for the marital residence, as well as day care expenses. The order further provided that all amounts paid on the plaintiff's behalf were to be considered part of her alimony. Consequently, the defendant was ordered to pay to the plaintiff directly the monthly difference between the expected amount of each bill and its actual cost.

[5] Because of our conclusion that all financial orders must be reversed, we need not address the plaintiff's arguments that (1) the court's memoranda of decision contained inconsistent financial orders, and (2) the defendant's August 26, 2006 financial affidavit understated his income because of excessive and unjustified federal tax withholdings.

With regard to the alleged excessive tax withholdings, however, we note that none of the three memoranda of decision reflect the court's findings on this issue, although the claim seems to have some substance to it. We trust that on remand, the court will conduct a full exploration into the possible concealment of income in this manner.

In addition to ordering the defendant to pay alimony and child support, the court ordered him to pay the plaintiff fifty dollars per week upon receipt of his annual bonus. The defendant was further ordered to provide the plaintiff with documentation detailing the amount of his bonus and the date of payment.

During the six month period following the January 15, 2004 temporary alimony and custody order, the plaintiff filed a number of motions with the court, three of which are at issue in this appeal. The first, a motion for orders filed on April 12, 2004, requested that the court compel the defendant to reimburse the plaintiff for medical and dental expenses incurred between January 2 and March 8, 2004.

On May 14, 2004, the plaintiff filed a "motion for contempt pendente lite" asking that the court hold the defendant in contempt for violating the January 15, 2004 order and subsequent court orders issued on April 30, 2004. Included in the motion were allegations that the defendant had made unauthorized deductions from the plaintiff's weekly child support payments and failed to comply with the court's orders regarding mandatory disclosures to the plaintiff, weekly payment of the additional fifty dollars upon receipt of his bonus and production of documentation regarding the size of his bonus and date of payment.

The third motion, a "motion for contempt and request for immediate compliance pendente lite," requested that the court hold the defendant in contempt for failure to disclose various financial documentation to the plaintiff. The motion also reiterated the allegations made in the May 14, 2004 motion for contempt pendente lite regarding the defendant's failure to comply with the provisions of the January 15, 2004 order concerning his bonus.

A trial court is obligated to consider and rule on all motions properly brought before it. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 484, 706 A.2d 960 (1998) ("[c]ourts are in the business of ruling on litigants' contentions, and they generally operate under the rule . . . that where a court is vested with jurisdiction . . . it becomes its . . . duty to determine every question which may arise in the cause" [internal quotation marks omitted]). Notably, our Supreme Court has advised that "[t]his general rule is particularly important in the context of marital dissolution cases because of the likelihood of continuing changes in the parties' circumstances requiring continuing dispute resolution by the court." Id.

In keeping with this notion, the law affords parties various means of addressing a trial court's failure to rule on their motions. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record . . . to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Champagne* v. *Champagne*, 85 Conn. App. 872, 879, 859 A.2d 942 (2004). In addition, Practice Book § 60-2 (1) provides a procedure by which a party can ask this court for an order compelling the trial court to rule on an undecided motion.[6] *Lambert* v. *Donahue*, 78 Conn. App. 493, 511–12, 827 A.2d 729 (2003). Given these options, this court has previously stated that "an appeal is not the proper remedy [for the court's failure to rule on a motion]." (Internal quotation marks omitted.) Id., 511.

---

[6] Practice Book § 60-2 provides in relevant part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier if appropriate . . . . The court may, on its own motion . . . or upon motion of any party, (1) order a judge to take any action necessary to complete the trial court record for the proper presentation of the appeal . . . ."

The plaintiff in this case has not followed the correct procedure for redressing her complaints concerning the court's alleged failure to decide her pendente lite motions. Accordingly, we decline to review this claim.

The judgment is reversed with respect to the financial orders only and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.