## GEORGE J. ROZSA *v.* ELLEN M. ROZSA
### (AC 29538)

Bishop, Gruendel and Harper, Js.

Argued April 21—officially released September 8, 2009

*Lindy R. Urso*, with whom was *David C. Erdos*, for the appellant (plaintiff).

*Thomas M. Shanley*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, George J. Rozsa, appeals from the judgment of the trial court dissolving his marriage to the defendant, Ellen M. Rozsa. On appeal, the plaintiff claims that, in fashioning its financial orders, the court improperly determined his net income and abused its discretion by (1) ordering him to pay alimony and support that exceeded his income, (2) assigning the defendant a majority of the marital assets while

assigning him a majority of the marital debt and liabilities, (3) awarding the defendant alimony and (4) awarding the defendant attorney's fees and expert witness fees. We affirm the judgment of the trial court.

The record discloses the following relevant information. The parties were married on October 22, 1988. They have two daughters, born in 1990 and 1996, and a son, born in 1993. The two eldest children have emotional disabilities that require special medical, psychiatric and educational support. The plaintiff brought this dissolution action by a complaint dated October 7, 2004, in which he sought a dissolution of the marriage, sole custody of the minor children and an equitable division of the marital assets. Subsequently, the defendant filed a cross complaint in which she sought a dissolution of the marriage, alimony, joint custody of the minor children, child support, an assignment of the plaintiff's estate, an interest in six parcels of real property, an equitable division of the marital assets, attorney's fees, a wage execution and an educational support order.

Following trial, the court issued its memorandum of decision on December 7, 2007, dissolving the parties' marriage, adopting the parties' agreed parenting plan and setting forth its financial orders. The plaintiff timely filed a motion to reargue on December 21, 2007. This appeal followed the court's denial of the plaintiff's post-judgment motion. Additional facts will be set forth as necessary.

We first set forth the applicable standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the

correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Boyne* v. *Boyne*, 112 Conn. App. 279, 282, 962 A.2d 818 (2009).

"Generally, we will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard. . . . We must, however, consider, the paramount purpose of a property division pursuant to a dissolution proceeding [which] is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution." (Citation omitted; internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 355, 880 A.2d 872 (2005). Mindful of these principles, we turn to the plaintiff's claims.

I

The plaintiff first claims that the court improperly determined that his annual net income was $100,000. Specifically, the plaintiff argues that the court should have reduced his net income of $100,000 to $79,800 because $20,200 of that figure represented rental income that was derived from properties awarded to

the defendant in the property distribution award. The defendant counters that the court made no mathematical errors in determining the plaintiff's net income because that figure was expressly based on the plaintiff's actual income as well as his earning capacity. In response, the plaintiff claims that the court could not reasonably rely on his earning capacity in rendering its financial orders because (1) there were no findings of fact to support the court's general conclusion as to his earning capacity and (2) there was no evidence that he wilfully depleted his earnings in an attempt to deny support to the defendant. We are not persuaded by the plaintiff's claims.

It is well settled that "[i]n dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in General Statutes §§ 46b-81 (division of marital property), 46b-82 (alimony) and 46b-84 (child support). All three statutory provisions require consideration of the parties' 'amount and sources of income' in determining the appropriate division of property and size of any child support or alimony award."[1] *Bartel* v. *Bartel*, 98 Conn. App. 706, 711, 911 A.2d 1134 (2006). General Statutes § 46b-84 (d) provides in relevant part: "In determining whether a child is in need of maintenance and, if in need, the respective

---

[1] General Statutes § 46b-81 (c) provides in relevant part that trial courts shall consider various factors when allocating marital property among the parties, including "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . ."

General Statutes § 46b-82 (a) provides in relevant part that trial courts should determine the appropriate amount of alimony on the basis of "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, *earning capacity*, amount and sources of income, estate, vocational skills and employability of each of the parents . . . ." (Emphasis added.)

"Furthermore, [i]t is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings. . . . Moreover, [g]iven the beneficial purpose of the state's scheme for awarding child support, we see no reason to limit [the] consideration of earning capacity to earnings from employment only." (Citations omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 489–90, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008).

The plaintiff's basic premise that the court incorrectly calculated his net income because it failed to deduct the rental income is mistaken. There is no basis in the record for this premise, nor did the plaintiff seek an articulation to confirm whether the court's net income calculation included rental income from the property assigned to the defendant. Moreover, the court's net

income determination was based on the plaintiff's actual income and his earning capacity. Thus, even if the court had deducted the rental income from the plaintiff's net income, it still could have determined that his net income was $100,000 on the basis of his remaining income and his earning capacity.

The plaintiff next argues that there were no findings in the record to support the court's conclusions regarding his earning capacity. The court's ample findings regarding the plaintiff's earning capacity belie this claim. The court, in its memorandum of decision, found that the plaintiff was healthy, had a bachelor of arts degree in accounting, a bachelor of arts degree in mathematics and a master of business administration degree in finance. He also had been a licensed certified public accountant for more than twenty-five years. The plaintiff worked for various companies between 1991 and 1998, and eventually earned salaries between $120,000 and $175,000. The court also found that during that period, the plaintiff maintained an accounting practice part-time and in 1998 began to work at his private practice full-time. In 2006, his ordinary business income from that source was $43,715. The plaintiff also had a 50 percent interest in U.S. Limousine Service, Inc., a company from which he received a $40,000 salary and medical benefits for himself, the defendant and their children. The plaintiff also received income from property development ventures and other investments.

The court also found the following: "The defendant hired Financial Research Associates to analyze the plaintiff's net disposable income and net disposable cash flow for the years 2001 through 2005. The records for 2006 and 2007 were not available for analysis initially. Her expert witness, Lisa J. Cruikshank . . . testified in support of the written report she prepared . . . .

In summary, she concluded that the plaintiff's annual net disposable income was $117,460 in 2005 and averaged $100,156 for the 2001-2005 period. She supplemented her report with estimates for 2006 and 2007 . . . . The court found her testimony credible and her conclusions were reasonable and supported by the details of the report. The court concludes that the plaintiff has an annual net disposable income of $100,000 that also reflects his earning capacity based on his employment history." (Citations omitted.) On the basis of those findings, which included the plaintiff's age, education, employment history and acumen, the court reasonably could have imputed a net income of $100,000 to the plaintiff.

The plaintiff also argues that the court had to first find evidence that he wilfully depleted his earnings before considering his earning capacity. The teachings of our Supreme Court instruct us that although financial orders often arise in that context, the court need not find that the plaintiff wilfully diminished his income in order to consider earning capacity. This issue was squarely addressed in *Weinstein* v. *Weinstein*, 280 Conn. 764, 911 A.2d 1077 (2007). There, although the court was dealing with an imputed rate of return on investment assets rather than their actual realized return, the court analogized between passive and employment income. The court noted that "[w]hile it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations . . . we never have required a finding of bad faith before imputing income based on earning capacity." (Citation omitted; internal quotation marks omitted.) Id., 772. Thus, in the present case, the court did not abuse its discretion in considering the plaintiff's earning capacity in forming its financial orders.

## II

The plaintiff next claims that the court abused its discretion by ordering the plaintiff to pay alimony and support exceeding his net income. Specifically, the plaintiff contends that when his court-ordered obligations, which annually total $79,700,[2] and his weekly expenses, which annually total $27,570,[3] are deducted from his net annual income of $79,800, he is left with a negative net disposable income of $27,470. We are unpersuaded.

"In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in § 46b-81 (division of marital property) and § 46b-82 (alimony). Both provisions require consideration of the parties' 'amount and sources of income' in determining the appropriate division of property and alimony." *Pellow* v. *Pellow*, 113 Conn. App. 122, 128, 964 A.2d 1252 (2009).

The record does not support the plaintiff's argument. In sum, the court heard probative evidence that the plaintiff's earnings were greater than he claimed and that some of his expenses could not reasonably be considered as deductions from his claimed earnings. For reasons previously stated, we conclude that the court properly attributed $100,000 as the plaintiff's annual net disposable income. In its memorandum of decision, the court ordered the plaintiff to pay to the

---

[2] The plaintiff calculated this figure by adding the annual averages of his weekly obligations, which include: (1) child support, $384, for an annual total of $20,000; (2) alimony, $500, for an annual total of $26,000; (3) life insurance premium, $124, for an annual total of $6500; (4) medical insurance premium, $273, for an annual total of $14,200; and (5) unreimbursed medical insurance, $250, for an annual total of $13,000. He rounded up his child support from $19,968 to $20,000 and his medical insurance premium from $14,196 to $14,200.

[3] The plaintiff stated in his appellate brief that his necessary weekly expenses totaled $39,170, but he reduced that figure at oral argument because he had mistakenly listed certain expenses twice.

defendant $384 per week in child support and $500 per week in periodic alimony until the death of either party, for an annual total of $45,968. The court also ordered the plaintiff to continue to provide medical insurance for the parties' children, at his expense. This expense, however, was not a deduction from the plaintiff's net disposable income, as evidence adduced at trial indicated that these insurance premiums were paid by the limousine service.

Additionally, the actual amount of the plaintiff's expenses was in dispute. Cruikshank's report, which the court credited as reliable, indicated that although the plaintiff's financial affidavit showed substantial shortfalls between his income and expenses, she could not "determine if the shortfalls were realistic." Cruikshank further noted that the outflows from the plaintiff's bank accounts substantially exceeded the expenses on the plaintiff's financial affidavit, even though the use of the additional outflows could not be identified. Cruikshank also noted that there were numerous inconsistencies between the plaintiff's financial records and his financial affidavit regarding his income, expenses and cash flow.

The court was free to discredit the plaintiff's claims regarding the amount of his expenses. See *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878–79, 784 A.2d 905 ("[T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the credibility of a witness." [Citations omitted; internal quotation marks omitted.]), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). Thus we are not persuaded that the court abused its discretion in fashioning its alimony and support orders.

## III

The plaintiff additionally claims that the court abused its discretion in its property distribution orders. The plaintiff raises a plethora of arguments, including that the court (1) improperly failed to offset his assets with concomitant liabilities, (2) improperly ordered him to pay all of the marital debt, (3) inaccurately purported to distribute to him 100 percent of the property owned by the George J. Rozsa Family Limited Partnership, LLC (family partnership), (4) improperly awarded the defendant 73 percent of his pension accounts and (5) improperly awarded the defendant 68 percent of the marital estate. Contrary to the plaintiff's claims, we conclude that the court properly made its property distribution and that its findings are supported by the record.

"The purpose of a dissolution action is to sever the marital relationship, to fix the rights of the parties with respect to alimony and child support . . . [and] to divide the marital estate . . . . The trial court is empowered to deal broadly with the equitable division of property incident to a dissolution proceeding, and, consistent with the purpose of equitable distribution statutes generally, the term property should be interpreted broadly as well. . . . General Statutes § 46b-81[4] confers broad powers upon the court in the assignment of property, and the allocation of liabilities and debts is a part of the court's broad authority in the assignment of property." (Citations omitted; internal quotation

---

[4] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

marks omitted.) *Roos* v. *Roos*, 84 Conn. App. 415, 420, 853 A.2d 642, cert. denied, 271 Conn. 936, 861 A.2d 510 (2004).

The court awarded the plaintiff the parcel of property at 185 Interlaken Road, Stamford, which had equity in the amount of $1,190,000, and the parcel of property at 225 Greenwich Avenue, Stamford, which had equity in the amount of $530,000. The court also ordered that "[t]he plaintiff shall retain his interest in U.S. Limousine Service, Inc.; his Fidelity SEP-IRA xxx230 having an approximate value of $303,504 as of March, 30, 2007; his brokerage account xxx146 holding about $12,075 as of March, 30, 2007; his Raymond James IRA of about $1300; his checking accounts; his various 'other investments,' including the New Canaan house under construction, assigned a total value of $391,615.92 with an itemization attached to his revised September 26, 2007 financial affidavit; the Northwest Mutual life insurance policy; the two motor vehicles listed on his affidavit and all tangible items of personal property currently in his possession." The court further ordered that "[t]he plaintiff shall be solely responsible for all the liabilities listed on his revised financial affidavit and 50 percent of the defendant's Nordstrom Visa credit card."

The court awarded the defendant the parcel of property at 81 Barmore Drive, Stamford, which had equity in the amount of $100,000; the parcel of property at 24 Cos Cob Avenue, Cos Cob, which had equity in the amount of $640,000; the parcel of property at 2 View Street, Greenwich, which had equity in the amount of $580,000; and lot 2, Interlaken Drive, which had equity in the amount of $545,000. The court also awarded the defendant the plaintiff's Fidelity IRA xxx890, which had an approximate value of $811,000 as of March, 30, 2007. The court further ordered the defendant to transfer her 87 percent interest in the family partnership to the plaintiff. The defendant was permitted to retain her

bank account, her 2001 Chrysler vehicle and all tangible items of personal property in her possession. She was also ordered to be solely responsible for her American Express Cash Rebate card xxx97000 and for the remaining 50 percent of her Nordstrom Visa credit card.

The plaintiff first argues that in distributing to him $391,615.92 in "other assets," the court improperly failed to offset that amount by his liabilities. It was within the court's discretion, however, to award to the plaintiff assets along with their corresponding obligations. See *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 333, 913 A.2d 1096 (2007) (courts may assign liabilities based on parties' respective ownership of each debt).

The plaintiff's claim that the court improperly ordered him to pay all of the marital debt is equally unavailing. The record reveals that with the exception of the court's order for the plaintiff to pay 50 percent of the defendant's Nordstrom credit card, the majority of the liabilities that were assigned to him stemmed from his business dealings. Although the plaintiff was ordered to be solely responsible for the liabilities related to his credit cards, he testified that he was the only person to use those cards.

The plaintiff next argues that the court improperly counted U.S. Limousine Service, Inc., twice in the property distribution award because the court awarded him his interest in the company and also included that interest in his total asset award of $391,615.92. It is evident from the record, however, that the plaintiff's interest in U.S. Limousine Service, Inc., was not counted twice.

The plaintiff's revised financial affidavit included an itemized list of "other assets," which totaled $391,615.92. The court's orders provided in relevant part: "The plaintiff shall retain his interest in U.S. Limousine Service, Inc.; his Fidelity SEP-IRA xxx230 having an approximate value of $303,504 as of March 30, 2007;

his brokerage account xxx146 holding about $12,075 as of March 30, 2007; his Raymond James IRA of about $1300; his checking accounts; his various 'other investments,' including the New Canaan house under construction, assigned a total value of $391,615.92 with an itemization attached to his revised September 26, 2007 financial affidavit . . . ." The court did not list the value of the plaintiff's interest in U.S. Limousine Service, Inc., which was included on the plaintiff's itemized list at a value of $100,000. In comparison, the assets that the court expressly valued, including his Fidelity SEP-IRA account, brokerage account and Raymond James IRA, were not on the plaintiff's itemized list of "other assets." Thus we conclude that the court did not double count the plaintiff's interest in U.S. Limousine Service, Inc.[5]

The plaintiff also argues that the court improperly attempted to distribute 100 percent of the family partnership to him when the parties' children owned 33 percent of the family partnership. This claim has no merit. As reflected in the record, the operating agreement of the family partnership stated that the defendant retained an 87 percent ownership interest, the plaintiff retained a 10 percent ownership interest and the three children each retained a 1 percent ownership interest in the family partnership. The court

_____

[5] We also note that the plaintiff failed to seek an articulation of the court's property distribution award with respect to whether the court counted his interest in U.S. Limousine Service, Inc., twice. "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005); see also *Premier Capital, Inc.* v. *Grossman*, 92 Conn. App. 652, 660 n.1, 887 A.2d 887 (2005).

ordered the defendant to transfer her 87 percent interest in the family partnership to the plaintiff. The purpose of the order was to ensure that the defendant transferred 100 percent of her interest in the partnership to the plaintiff. The plaintiff testified that he modified the agreement, decreasing the defendant's interest to 50.5 percent, increasing his interest to 16.67 percent and increasing the children's total interest to 33 percent. Even though the plaintiff failed to offer any evidence that those percentages were, in fact, modified, the central point is that the court only dealt with the defendant's interest in the partnership, awarding it in its entirety to the plaintiff.

The plaintiff next argues that the court failed to consider the age of the parties and the parties' earning potential in its order distributing 73 percent of his pension accounts to the defendant. "Pension benefits are widely recognized as among the most valuable assets that parties have when a marriage ends. . . . Nevertheless, there is no set formula that a court must follow when dividing the parties' assets, including pension benefits." (Citations omitted; internal quotation marks omitted.) *Martin* v. *Martin*, 101 Conn. App. 106, 111, 920 A.2d 340 (2007). The record reveals that the defendant had no income, no pension and less opportunity to accumulate savings for her retirement on the basis of her sporadic work history and her obligations to care for her two children, one of whom was emotionally troubled and required supervision and special care. Under these circumstances, we cannot find that the court abused its discretion in its property disposition orders, including its award of 73 percent of the plaintiff's pension to the defendant.

The plaintiff finally argues that the court improperly awarded the defendant 68 percent of the marital estate. In its orders, the court awarded the plaintiff

$2,442,504.37 in assets[6] and awarded the defendant $2,676,000[7] in assets. The plaintiff claims, however, that the court's awards were inequitable because he received the lion's share of the marital debt, thereby reducing his net asset award to $1,294,852.

"General Statutes § 46b-81 (c) directs the court to consider numerous separately listed criteria. No language of presumption is contained in the statute. Indeed, § 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. . . . On the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, supra, 99 Conn. App. 332.

In line with § 46b-81, the court stated in its memorandum of decision that it "reviewed the evidence in light of the relevant statutes and relevant case law," and that it further considered the parties' respective health, education, employment history, income, skills, assets and liabilities. We conclude, therefore, that in framing its property distribution awards, the court considered the appropriate statutory factors and did not abuse its discretion.

## IV

The plaintiff next claims that the court abused its discretion in its alimony order. We are not persuaded.

General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be

---

[6] This figure is based on the total assets awarded to the plaintiff in the memorandum of decision.

[7] This figure is based on the total assets awarded to the defendant in the memorandum of decision.

awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

"General Statutes § 46b-82 describes circumstances under which a court may award alimony. The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony." (Internal quotation marks omitted.) *Hughes* v. *Hughes*, 95 Conn. App. 200, 210, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in awarding the defendant $500 in weekly alimony "until the death of either party, the defendant's remarriage or future court order." The court found that "[t]he defendant, a college graduate with a master's degree in journalism, is a homemaker residing with their two daughters [in] . . . Stamford, Connecticut. The plaintiff has been paying the mortgage, the home equity loan, the taxes, insurance and utilities for the property and has been giving the defendant $350 weekly." The record also revealed that the defendant was the primary caretaker for the parties' children and the plaintiff's parents during the parties' marriage. Although the defendant had worked outside the home, her employment was sporadic. We conclude, therefore, that under all the circumstances presented to the court, including the defendant's lack of income and the level of the plaintiff's income, the court's order for the payment of alimony was not an abuse of discretion.

## V

The plaintiff's final claim is that the court abused its discretion in awarding $30,000 in attorney's fees and $12,000 in expert witness fees to the defendant. Specifically, the plaintiff argues that the imposition of these additional costs, in light of the totality of the court's other awards, was an abuse of discretion. We disagree.

"General Statutes § 46b-62 vests in the trial court the discretion to award attorney's fees in custody proceedings.[8] Our Supreme Court has included within the definition of attorney's fees allowable under § 46b-62 certain costs of litigation, including expert witness fees. . . . The criteria to be considered in determining whether an award of attorney's fees is appropriate include 'the age, health, station, occupation, amount and sources of income, vocational skills, employability [and] estate and needs of each of the parties . . . .' General Statutes § 46b-82. We review the court's awarding of attorney's fees under the abuse of discretion standard. . . . The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did." (Citations omitted.) *Gentile* v. *Carneiro*, 107 Conn. App. 630, 653, 946 A.2d 871 (2008); see also *Eslami* v. *Eslami*, 218 Conn. 801, 819–21, 591 A.2d 411 (1991); *Medvey* v. *Medvey*, 98 Conn. App. 278, 287–88, 908 A.2d 1119 (2006).

In the present matter, the court reasonably could have concluded as it did. The record supports the court's finding that the defendant had no income other than the $350 weekly stipend that the plaintiff provided and that he paid all of her household expenses. There

---

[8] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of [chapter 815j of the General Statutes], the court may order . . . either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

also was ample evidence in the record demonstrating the plaintiff's income, financial status and earning capacity. On the basis of those considerations, it was reasonable for the court to have determined that counsel fees of $30,000 and expert witness fees of $12,000 should have been allowed. Accordingly, we cannot conclude that the court abused its discretion in awarding the defendant attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.