# GEORGIA COTTRELL *v.* RICHARD COTTRELL
## (AC 31756)

Alvord, Espinosa and Bishop, Js.

Argued October 18, 2011—officially released January 17, 2012

*Daniel J. Klau*, for the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Richard Cottrell, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Georgia Cottrell. The defendant claims that the court improperly (1) found that the marital estate included four properties that the parties did not own at the time of the dissolution and (2) determined that he fraudulently conveyed his interest in several properties that otherwise would have been subject to claims of equitable distribution. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The court dissolved the parties' twelve year marriage on November 17, 2009. At the time of the dissolution, the parties had two minor children. The court found that the marriage had broken down irretrievably and attributed fault to both parties. As part of the dissolution judgment, the court incorporated the parties' agreement regarding custody and parenting access. The court also entered orders with respect to, inter alia, the defendant's obligation to pay alimony and child support, medical insurance, the division of personal property and the disposition of real property in the marital estate. The disposition of certain real property is at issue in this appeal. The court ordered the defendant to "buy the plaintiff's legal and equitable interest in the marital properties within ninety (90) days

of this judgment by paying her $200,000 by certified check or bank check." The defendant was to retain possession of the marital home and his interest in the rental properties acquired before and during the marriage.

The defendant appealed from the dissolution judgment on December 4, 2009. On February 22, 2010, he filed a motion for articulation requesting that the trial court "articulate its findings concerning each specific piece of real property that [it] determined constituted marital property at the time of dissolution, including the fair market value of each property and the defendant's equity interest in each property." In the court's articulation filed October 8, 2010, it stated that it "relied on the sworn financial affidavits of the parties filed at the time of the dissolution" and then proceeded to list seven properties that it determined to be marital property. The court did not indicate the value of each property nor did it articulate the percentage of the defendant's equity interest in any of the listed properties. The defendant did not file a motion for review of the trial court's articulation with this court.

I

The defendant's first claim on appeal is that the court improperly included four properties in the marital estate, which "resulted in an overvaluation of the economic value of the defendant's interest in the marital estate." Specifically, the defendant claims that the court's findings were clearly erroneous because it listed 2 Fallo Court in Hampton Bays, New York and 204 Point Beach Drive, unit 3B, in Milford as marital property when neither party had ever owned those properties, and also listed 53 Ferry Court in Stratford and 208 Point Beach Drive, unit 3C, in Milford as marital property when those properties had been foreclosed or sold prior to the dissolution judgment. Because the property

award was but one part of a carefully crafted mosaic; see *Brooks* v. *Brooks*, 121 Conn. App. 659, 672, 997 A.2d 504 (2010); the defendant claims that a new trial is required with respect to all of the financial issues. We disagree.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 122, 124–25, 902 A.2d 729 (2006). "That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 237–38, 987 A.2d 362 (2010).

General Statutes § 46b-81 (c) directs the court to consider numerous separately listed criteria in distributing marital property at the time of the dissolution judgment. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . Generally, we will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard. . . . We must, however, consider the paramount purpose of a property division pursuant to a dissolution proceeding [which] is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution." (Citation omitted; internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 4, 977 A.2d 722 (2009).

In the present case, the defendant claims that four of the seven properties that the court included in the marital estate either had never been owned by the parties or had been disposed of by foreclosure or sale prior to the dissolution judgment. Before examining the status of each of the properties, it is necessary to set forth additional facts as were found by the court or that were undisputed by the parties. The defendant acquired several properties before and during the marriage. Title to all of these properties was held by the defendant. The plaintiff never held record title to any of the properties. As early as 1999, the plaintiff consulted with attorneys regarding divorce. The defendant testified that he and the plaintiff had discussed separating after the first year of the marriage and "many, many times throughout [the] marriage." In September, 2005, the defendant transferred a partial interest in several of these properties to his children, who were then five and three years of age. In April, 2006, he conveyed his

entire interest in the marital home at 3 Packer Brook Road in Redding to his young children. The plaintiff filed her dissolution complaint on September 7, 2006.

As a result of the foregoing transfers to his children, the defendant listed fractional interests in various rental properties and no ownership interest in the marital home on his most recent financial affidavit filed with the court on June 15, 2009. The plaintiff's financial affidavit, also filed with the court on June 15, 2009, indicated that she had equitable interests in all of the seven properties identified in the trial court's articulation. At trial, she testified that she compiled the property list at the time she commenced the dissolution action after reviewing certain information that she retrieved from the defendant's computer. After finding that the defendant's proffered explanation for transferring his interests in the properties was "unpersuasive," the court concluded that the deeds were executed in anticipation of the dissolution action. With that background in mind, we now turn to the defendant's claims with respect to each of the four disputed properties.

A

2 Fallo Court, Hampton Bays, New York

The defendant claims that neither party ever owned an interest in the New York property, and, therefore, it was clearly erroneous for the court to have included it in the marital estate. He testified that the New York property was owned by his father and that he had intended to purchase it at one point in time during the marriage. According to the defendant, he gave his father a $50,000 deposit toward the purchase, but his father returned that money to him when he changed his mind and decided not to buy the property.

The New York property was listed on the defendant's first financial affidavit filed with the court on November

28, 2006.[1] He stated that he had a 100 percent equitable interest in that property. The plaintiff listed an equitable interest in the New York property on all of the financial affidavits that she filed with the court. She testified that she included the New York property because she saw it on the defendant's computer. Although the defendant testified that his father returned his $50,000 deposit, the plaintiff testified that she did not receive any portion of the deposit that was allegedly returned to the defendant.[2]

In its articulation, the court expressly stated that it had relied on the financial affidavits filed at the time of the dissolution.[3] It is undisputed that the plaintiff's most current financial affidavit did include the New York property. It also is undisputed that the defendant included the New York property in two financial affidavits filed with the court during the dissolution of his marriage. Although he claimed that he no longer had an equitable interest in the property because his $50,000 deposit had been returned to him, the court was not obligated to credit that testimony.[4] In light of his own testimony that he continued to use the property, and given the fact that the court found that he had fraudulently conveyed interests in other properties to prevent

[1] He also included the New York property on his financial affidavit filed with the court on March 26, 2007.

[2] The defendant acknowledged at trial that he still vacations at the New York property with his children and his girlfriend and admitted expending money in that area of New York through the use of his credit cards.

[3] In a dissolution action, marital property is to be valued as of the date of the dissolution. See *Tobey* v. *Tobey*, 165 Conn. 742, 748–49, 345 A.2d 21 (1974); *Wendt* v. *Wendt*, 59 Conn. App. 656, 661–62, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

[4] "[T]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the credibility of a witness." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, supra, 117 Conn. App. 10.

the plaintiff from acquiring her equitable share in the dissolution judgment, the court reasonably could have concluded that the defendant continued to have a presently existing, enforceable and therefore distributable interest in the New York property. "[P]resently enforceable rights, based on either property or contract principles, are sufficient to cause property to be divisible. . . . [T]here is a spectrum of interests that do not fit comfortably into our traditional scheme and yet should be available in equity for courts to distribute." (Citation omitted.) *Mickey* v. *Mickey*, 292 Conn. 597, 625, 974 A.2d 641 (2009).

Accordingly, we cannot conclude that the court's inclusion of 2 Fallo Court in Hampton Bays, New York as marital property was clearly erroneous.

B

204 Point Beach Drive, Unit 3B, Milford

The defendant also claims that neither party ever owned an interest in 204 Point Beach Drive, unit 3B, in Milford (unit 3B), and that it was clearly erroneous for the court to have included it in the marital estate. This property was not listed on any of the defendant's financial affidavits, nor was there any testimony at trial with respect to its ownership. The property was included on all of the plaintiff's financial affidavits, however, because she obtained her marital property information from the defendant's computer.

We have carefully reviewed the record in this appeal, an arduous process, as the plaintiff was excluded from record ownership of each one of these properties and the defendant conveyed partial interests in several condominium units to his children. Additionally, one of the rental units was owned by the defendant and a friend, and they shared the expenses and income equally between them. From this review, it is reasonable to

assume that the court either (1) determined that the defendant had an interest in unit 3B because his computer records included it as his property or (2) misidentified that unit and meant to reference 208 Point Beach Drive, unit 2C, in Milford (unit 2C), which was another condominium unit owned by the defendant.

In that regard, we note that *all of the financial affidavits* filed by the defendant and the plaintiff included unit 2C. The defendant's most current affidavit, filed with the court on June 15, 2009, indicated that he still held a one-third interest in that unit. He had transferred two thirds of his interest in that unit to his children in September, 2005, which the court found to be a fraudulent conveyance. The court mentioned unit 2C in its initial memorandum of decision and did not indicate that the property had been sold or disposed of prior to the dissolution. Furthermore, the defendant never testified that unit 2C was no longer part of the marital estate, and his financial affidavit filed at the time of the dissolution confirms that it was still part of the marital estate. Nevertheless, the court's articulation did not include unit 2C as one of the seven properties in the marital estate. Instead, it listed unit 3B as one of the seven properties. In light of the fact that both parties agreed that unit 2C was part of the marital estate and that there was no testimony at trial to the contrary, it is likely that the court's failure to include it as real estate in the marital estate was mere inadvertence.

The defendant's claim on appeal is that the court "overvalued the economic value of the defendant's interest in the marital [property]" by including unit 3B as one of the properties in the estate. In the dissolution judgment, the court simply ordered the defendant to "buy the plaintiff's legal and equitable interest in the marital properties within ninety (90) days of this judgment by paying her $200,000 by certified check or bank check." In its articulation, the court specified the seven

properties that it considered to be in the marital estate, but the court listed no value for any of them. Because the articulation is silent in this regard, we cannot, without speculation, determine whether the court overvalued the defendant's interest absent information as to the value, if any, it ascribed to unit 3B.[5] Thus, assuming arguendo that the court erroneously included unit 3B as one of the real properties in the marital estate, that determination would be harmless given the defendant's failure to demonstrate how the court's $200,000 award to the plaintiff was inflated because of its inclusion. See *Reizfeld* v. *Reizfeld*, 125 Conn. App. 782, 796–98, 40 A.3d 320, cert. denied, 300 Conn. 915, 13 A.3d 1103 (2011). It is the appellant's responsibility to provide this court with an adequate record for review. Accordingly, the defendant's claim fails with respect to 204 Point Beach Drive, unit 3B, in Milford.

## C

### 53 Ferry Court, Stratford

The defendant claims that the court improperly determined that 53 Ferry Court in Stratford was part of the marital estate because that property had been sold at a foreclosure sale prior to the rendering of the dissolution judgment. Although the defendant listed the Ferry Court property in his financial affidavits filed with the court on November 28, 2006, through January 7, 2009, none of his subsequent financial affidavits included that property as one of his assets. At trial, the defendant testified on January 16, 2009, that a foreclosure sale had been ordered and scheduled for late February or early March of that year. On April 15, 2009, he testified that the

---

[5] As previously discussed, the defendant requested that the court articulate the value of each property, but the court failed to do so in its articulation. The defendant did not file a motion for review of that articulation with this court. With respect to unit 3B, we cannot speculate as to the court's reasoning or the evidence on which it relied. See *Keith E. Simpson Associates, Inc.* v. *Ross*, 125 Conn. App. 539, 543–44, 9 A.3d 394 (2010).

property had been sold and the proceeds from the sale were being held in a trust account by counsel for the minor children.

Although the real estate was no longer part of the marital estate, the proceeds from the foreclosure sale of that property had not been distributed. The defendant had transferred a partial interest in the Ferry Court property to his children in September, 2005, for no consideration. The court determined that the transfer was a fraudulent conveyance. The monetary proceeds from that sale clearly constituted marital property subject to equitable distribution. The fact that the court simply referred to the real estate rather than the monetary proceeds being held in an escrow account is harmless error.[6] Accordingly, the defendant's claim fails.

## D

### 208 Point Beach Drive, Unit 3C, Milford

The defendant claims that the court improperly determined that 208 Point Beach Drive, unit 3C, in Milford (unit 3C), was part of the marital estate because that condominium unit had been sold at a foreclosure sale prior to the rendering of the dissolution judgment. The defendant's most current financial affidavit filed with the court on June 15, 2009, indicates that "[a] foreclosure auction on [unit 3C] occurred on June 6, 2009." The only testimony at trial regarding the impending foreclosure was the defendant's statement on April 15, 2009, that the property "is in foreclosure."

Again, it is apparent from the defendant's financial affidavit that the property was to be foreclosed by sale.

---

[6] "It is axiomatic . . . that not every error is harmful. . . . [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 448, 782 A.2d 87 (2001).

Because this property, as several others, was one of the properties conveyed to his children in September, 2005, it is reasonable to assume that any proceeds from that sale also would be held in an escrow account. In that event, it would be harmless error, as previously discussed, for the court to have referenced the real estate rather than the monetary proceeds from the sale. If there were no proceeds from the sale, the defendant nevertheless has failed to demonstrate how the court's $200,000 award to the plaintiff was inflated because of the inclusion of unit 3C as one of the properties in the marital estate. We cannot, without speculation, determine whether the court overvalued the defendant's interest absent information as to the value, if any, it ascribed to unit 3C. Therefore, the defendant's claim must fail.

## II

The defendant's final claim is that the court improperly determined that he fraudulently conveyed his interest in several properties to his children prior to the commencement of the dissolution action. He argues that the court's determination was made on the basis of its "flawed chronology of events." Specifically, he claims that the court erroneously found that the defendant consulted attorney Timothy Aspinwall in late 2005 to prepare a settlement agreement when, in fact, he had not consulted him about obtaining a divorce until August, 2006. The defendant contends that the court's erroneous finding led to its conclusion that he transferred the interests in those properties in 2005 in anticipation of the filing of the divorce action because the parties' marriage was troubled at that time.

"The question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier. . . . We will not disturb the trial court's factual findings unless they are clearly erroneous and

unsupported by the record." (Internal quotation marks omitted.) *Jacobowitz* v. *Jacobowitz*, 102 Conn. App. 332, 340, 925 A.2d 424 (2007). "A fraudulent conveyance must be proven by clear and convincing evidence . . . ." (Internal quotation marks omitted.) Id., 342.[7]

In the present case, the court made several factual findings about the conveyances of the properties and the state of the parties' marriage before the dissolution action was commenced. The court found: (1) the plaintiff consulted with attorneys in 1999 regarding a divorce; (2) the defendant's alleged reasons for transferring the properties to his children in September, 2005, were not persuasive; (3) the conveyances to the children were made without sufficient consideration; (4) the conveyances to the children deprived the court of the ability to utilize sufficient resources to effectuate an equitable distribution; (5) the deeds were executed in anticipation of the dissolution action because the marriage was troubled at that time; and (6) the defendant sought to prevent the plaintiff from obtaining any interest in the real properties in the event of a dissolution.

The court did *not* state that it concluded that the parties' marriage was troubled in September, 2005, because the defendant consulted Aspinwall about a separation agreement. In its memorandum of decision, the court did indicate that Aspinwall was consulted in late 2005 and that the defendant requested him to draft a proposed settlement agreement. The record reflects that the referenced settlement agreement was dated August, 2006. Nevertheless, the court's conclusion that the marriage was troubled in September, 2005, is not dependent on that one finding.

The court found that the plaintiff contemplated a divorce action as early as 1999, when she was pregnant

---

[7] In its memorandum of decision, the court expressly stated that it found by clear and convincing evidence that the transfers were fraudulent conveyances.

with the parties' first child. That testimony was corroborated by the defendant's testimony that they had discussed separating after the first year of marriage and had discussed separation and divorce "many, many times throughout [the] marriage." During the trial, the plaintiff repeatedly testified that the marriage was troubled in August or September, 2005, when the defendant told her that he wanted her "out of the house," that the marriage "wasn't working" and that he no longer loved her. It is axiomatic that "the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the credibility of a witness." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, supra, 117 Conn. App. 10. We conclude that the court's findings are supported by the record and are not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.